UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Case No.___

SCOTTSDALE INSURANCE COMPANY, in its own capacity and as subrogee of R-L SALES LLC, a Utah limited liability company,

Plaintiff,

v.

DENNIS, JACKSON, MARTIN & FONTELA, P.A., a Florida professional association, and MARIA A. SANTORO, an individual,

Defendants.

---

## COMPLAINT

---

Plaintiff Scottsdale Insurance Company ("Scottsdale"), by and through counsel, complains as follows against Defendants Dennis, Jackson, Martin & Fontela, P.A. (the "Firm") and Maria A. Santoro ("Santoro"), referred to herein jointly as "Defendants."

### I. INTRODUCTION

An e-cigarette exploded in the mouth of a Florida man named J. Michael Hoce. He sued R-L Sales LLC ("RLS"), claiming RLS sold him a defective battery that caused the explosion. RLS's liability insurer,[1] Scottsdale, retained Santoro and the Firm to represent and defend RLS. Though the jury found that Mr. Hoce's total

---

[1] R-L Sales is the named insured, though it is apparent that R-L Sales LLC was the intended named insured and was treated as such by RLS and Scottsdale alike.

1

medical damages were no more than $47,800, it entered a verdict of more than $2 million. This verdict was more than the $1 million limit in RLS's policy with Scottsdale. Nevertheless, after an unsuccessful appeal, Scottsdale paid the entire judgment.

On December 23, 2019, after Scottsdale had paid the entire judgment, RLS filed a Complaint in Utah against Santoro, the Firm, and Scottsdale, alleging damages arising from the poor result in the *Hoce* lawsuit. RLS claims that RLS's harm was caused, at least in part, by Santoro's alleged malpractice. RLS seeks to hold both Santoro and Scottsdale liable for that alleged malpractice.

Scottsdale presently has serious doubts as to whether Santoro committed malpractice in defending RLS as alleged by RLS, but that issue has not yet been directly adjudicated and therefore remains an open question. RLS is actively pursuing a judgment against Scottsdale[2] based on allegations of malpractice by Santoro and the Firm. Scottsdale files this Complaint to preserve its rights. For example, and among other scenarios, should RLS successfully establish in the Utah action that Santoro and the Firm committed malpractice, that such malpractice led to RLS suffering harm, and that Scottsdale is liable directly or indirectly for such harm, then Defendants should compensate Scottsdale accordingly. Scottsdale asserts claims herein both directly and as subrogee of RLS.

---

[2] And against Santoro and the Firm via a Motion to Reconsider, more fully described below.

## II. PARTIES

1.  At all relevant times, RLS was a limited liability company who sold batteries on the internet. Mr. Hoce alleges that a battery RLS sold him caused his e-cigarette to explode in his mouth.

2.  Scottsdale is an insurance company who provided certain liability insurance to RLS at the time of Mr. Hoce's accident, and who consequently provided RLS with a defense when Mr. Hoce sued RLS.

3.  Scottsdale is a corporation organized, incorporated, and existing in and under the laws of the State of Ohio.

4.  Scottsdale's principal place of business is in Arizona.

5.  The Firm is the law firm Scottsdale retained to represent and defend RLS in the *Hoce* lawsuit.

6.  The Firm is a corporation organized and incorporated in and under the laws of the State of Florida.

7.  The Firm's principal place of business is in Florida.

8.  Santoro is an individual resident of Florida and is a licensed attorney who practices law in Florida.

9.  Santoro is a partner at the Firm and was retained to represent and defend RLS in the *Hoce* lawsuit.

### III. JURISDICTION

10. Scottsdale incorporates by reference the above statements.

11. Federal district courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000" and the matter is between "citizens of different [diverse] States." 28 U.S.C. § 1332(a)(1). This category of original jurisdiction is called diversity jurisdiction.

***Diversity of Citizenship***

12. For purposes of determining diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center," meaning "the place where [the] corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). This is a single place. *Id.* at 93–95.

13. The plaintiff, Scottsdale, is a corporation who is incorporated in Ohio and is not incorporated in Florida. Scottsdale's principal place of business is in Arizona. Therefore, it is a citizen of Ohio and Arizona and is not a citizen of Florida.

14. The Firm is a corporation who is incorporated in Florida and is not incorporated in either Ohio or Arizona. The Firm's whose principal place of business is in Florida. Therefore, it is a citizen of Florida and is not a citizen of Ohio or Arizona.

15. Santoro is a resident of Florida and is not a resident of either Ohio or Arizona. She is a citizen of Florida and not a citizen of Ohio or Arizona.

16. Consequently, there is complete diversity of citizenship between the plaintiff and Defendants.

*Amount in Controversy*

17. As explained in more detail below, RLS alleges that, because of Defendants' malpractice in the *Hoce* lawsuit, Mr. Hoce obtained a judgment against RLS for over $2 million.

18. Scottsdale paid the entire judgment on RLS's behalf. Scottsdale has serious doubts about RLS's allegations of malpractice, but the issue has not been directly adjudicated so Scottsdale asserts the right to compensation by Santoro and the Firm should RLS's allegations of malpractice be correct.

19. Furthermore, as explained in more detail below, RLS alleges that, because of the poor result in the *Hoce* lawsuit caused by Defendants' alleged malpractice, RLS struggled as a business and lost value in excess of $400,000.

20. RLS seeks to recover these losses from Scottsdale in the Utah action.

21. Overall, the amount in controversy is far in excess of $75,000.

### IV. VENUE

22. Scottsdale incorporates by reference the above statements.

23. A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A civil action may also be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." *Id.* § 1391(b)(2).

24. One of the Firm's two offices is in Tallahassee, Florida, located in Leon County. Leon County is located within the Northern District of Florida.

25. Because at least one of the defendants resides in the Northern District of Florida and all defendants reside in the State of Florida, the United States District Court for the Northern District of Florida is the proper venue for this civil action.

26. Additionally, the *Hoce* lawsuit was litigated in Alachua County, which is also located within the Northern District of Florida. RLS alleges that the malpractice that led to the damages at issue occurred during the *Hoce* litigation.

27. Therefore, because a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of Florida, the United States District Court for the Northern District of Florida is the proper venue.

28. This District has four divisions, and a case "must be filed in a division in which venue would be proper if the division was a stand-alone district." N.D. Fla. Loc. R. 3.1(A)–(B).

29. The Tallahassee Division of the Northern District of Florida includes Leon

County. *Id.* Due to at least one defendant's residence in Leon County, it is proper to file this civil action in the Tallahassee Division.

## V. GENERAL FACTUAL ALLEGATIONS

30. Scottsdale incorporates by reference the above statements.

### The Hoce Lawsuit

31. On November 9, 2016, Mr. Hoce filed a civil action in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida, Case number 01-20160CA03942 (the "*Hoce* lawsuit").

32. In the *Hoce* lawsuit, Mr. Hoce sued RLS and alleged that a battery RLS sold him caused the e-cigarette in his mouth to explode, causing him damages.

33. At the time of Mr. Hoce's accident, RLS was covered by certain liability insurance through Scottsdale. The insurance in question had a limit of $1 million.

34. Pursuant to RLS's insurance policy, Scottsdale provided RLS with a defense in the *Hoce* lawsuit. It retained the Firm and Santoro to represent and defend RLS.

35. Santoro, a partner at the Firm, made an appearance on RLS's behalf and handled RLS's defense.

36. After a trial, the jury entered a verdict finding Mr. Hoce suffered at total of $47,800 in past and future medical expenses.

37. The jury also awarded $2 million in general damages.

38. After an unsuccessful appeal, Scottsdale paid the entire judgment.

***The Utah Lawsuit***

39. On December 23, 2019, RLS filed a civil action in the Third Judicial District Court in and for Salt Lake County, Utah, case number 190909985 (the "Utah lawsuit").

40. In the Utah lawsuit, which is currently pending, RLS asserted claims against the Firm, Santoro, and Scottsdale.

41. On February 3, 2020, the defendants in the Utah lawsuit removed RLS's complaint to the United States District Court for the District of Utah, case number 2:20-cv-00064.

42. In the Utah lawsuit, RLS alleged that Santoro lacked the skill to represent RLS in a complex products-liability case.

43. RLS alleged that Santoro failed to adequately examine RLS's witnesses, failed to collect and preserve evidence, failed to adequately investigate and evaluate Mr. Hoce's claims, failed to retain appropriate consulting experts, and failed to obtain appropriate expert witnesses to testify on RLS's behalf.

44. RLS alleged that Santoro and the Firm did not inform RLS of settlement offers made by Mr. Hoce and discouraged RLS from offering to settle within the policy limits.

45. RLS alleged that, at trial, Santoro failed to refute Mr. Hoce's damages fig-

ure and instead took a dangerous "all-or-nothing" approach by asking the jury to award nothing for general damages.

46. RLS alleged that Santoro failed to object to Mr. Hoce's presentation to the jury of RLS's wealth.

47. RLS alleged that Santoro's conduct during the trial was so cold, callous, and rude that she most likely alienated the jury and caused them to demonize RLS throughout the trial.

48. RLS alleged that the Firm failed to appropriately hire, train, and supervise Santoro, and this failure permitted her malpractice to occur in the *Hoce* lawsuit.

49. RLS alleged further acts of malpractice as set forth in the original and subsequent pleadings in the Utah lawsuit.

50. RLS alleged that the Firm is vicariously liable for Santoro's malpractice.

51. RLS alleged that, due to the poor and negligent handling of the *Hoce* lawsuit, RLS suffered, among other things, a judgment in excess of $2 million, liability for attorney's fees, and more than $400,000 in diminished business value.

52. Based at least in part on these alleged failures by Santoro and the Firm, RLS seeks damages not only from Defendants but also from Scottsdale, the insurance company who retained Defendants to defend RLS.

***RLS's Continued Pursuit of Claims***

53. On April 16, 2020, the United States District Court for the District of Utah

dismissed Santoro and the Firm as parties to the Utah lawsuit for lack of personal jurisdiction. The court held that there were insufficient minimum contacts with Utah to justify asserting personal jurisdiction over Defendants.

54. Nevertheless, on March 27, 2021, RLS filed a motion in the Utah lawsuit asking the court to reconsider its dismissal of Santoro and the Firm for lack of personal jurisdiction. RLS seeks to bring them back into the Utah lawsuit and continue to assert its allegations of malpractice against them.

55. The court in the Utah lawsuit has also subsequently dismissed all RLS's claims against Scottsdale relating to the *Hoce* lawsuit. But RLS has moved the court to reconsider that dismissal as well and continues to demand compensation from Scottsdale arising out of acts of malpractice allegedly committed by Santoro.

56. RLS has signaled an intent to appeal.

## VI. LEGAL MALPRACTICE: CLAIMS AS SUBROGEE OF R-L SALES LLC

57. Scottsdale incorporates by reference the above allegations.

58. In the Utah lawsuit, RLS asserts legal malpractice against Defendants in the form of professional negligence, breach of fiduciary duty, and breach of contract.

59. A claim of professional negligence requires allegations that (1) the attorney was employed by or in privity with the plaintiff, (2) the attorney neglected a reasonably duty, and (3) the attorney's negligence was the proximate cause of a loss to the plaintiff.

60. The breach of fiduciary duty constitutes a wrong which is distinct from professional negligence but still comprises legal malpractice. An attorney has the fiduciary duty to represent the client with honesty, forthrightness, loyalty, and fidelity. This cause of action overlaps with one for professional negligence, and therefore a breach of fiduciary duty may be analyzed using the elements of professional negligence.

61. The elements of a breach-of-contract claim are (1) a valid contract, (2) a material breach, and (3) damages.

62. If the allegations in RLS's complaint against Defendants are true, RLS has claims for professional malpractice, breach of fiduciary duty, and breach of contract against Defendants.

63. RLS alleges that it entered an express and implied contract with Defendants that they would defend it in the *Hoce* lawsuit. It alleges to have employed, or to have been in privy with, Santoro and the Firm.

64. RLS also alleges that Santoro and the Firm neglected applicable duties and standards of care and breached their fiduciary and contractual obligations in the ways outlined above, including failing to properly investigate the case, failing to communicate settlement offers, failing to retain appropriate experts, making poor trial decisions, and undergoing the legal defense without adequate experience and training. RLS alleges these breaches were material because it resulted in a poor re-

sult in the *Hoce* lawsuit and in RLS not having received a legal defense.

65. RLS alleges that the breaches proximately caused RLS to suffer significant damages, including the judgment in the *Hoce* lawsuit and RLS's diminished business value.

66. Scottsdale has standing to assert these legal malpractice claims against Defendants in RLS's place.

67. Scottsdale defended and indemnified RLS in the *Hoce* lawsuit under the Commercial General Liability (CGL) Coverage Form in a certain liability insurance policy, numbered CPS2414975 (the "Policy").

68. The CGL part of the Policy states that the insured transfers to Scottsdale all rights to recover any payment Scottsdale made under the CGL part:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them.

69. Scottsdale has serious doubts concerning RLS's allegations of malpractice against Santoro and the Firm, but the allegations have not been directly adjudicated and currently remain as open issues. Scottsdale was transferred and holds RLS's rights (if any) to recover the liability to Mr. Hoce it incurred and that Scottsdale paid as a result of Santoro's and the Firms alleged malpractice, including the over $2 million judgment.

70. Therefore, under the Policy, and as contractual subrogee of RLS, Scottsdale asserts the right to recover all payments Scottsdale made to Mr. Hoce to the extent of Defendants alleged malpractice in the *Hoce* lawsuit.

71. Alternatively, or in addition to being a contractual subrogee, by virtue of paying the judgment in the *Hoce* lawsuit on RLS's behalf, Scottsdale is subrogee of RLS under common law and equitable principles. The law permits equitable subrogation when (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and succeeds to the rights and priorities of the original creditor.

72. Scottsdale is an equitable subrogee to RLS's legal malpractice claims because Scottsdale paid RLS's liability to Mr. Hoce not as a volunteer but as to protect Scottsdale's interest in fulfilling contractual obligations.  And Scottsdale further paid amounts in excess of the policy limit that protected RLS while Scottsdale was under threat of bad faith liability alleged by RLS. Scottsdale was not personally liable for the judgment, and Scottsdale paid the entire liability to Mr. Hoce. Permitting Scottsdale to assert its right to subrogation would not do injustice to any

third party.

73. To the extent the damages were caused by the malpractice of Santoro, Scottsdale asserts the right to recover against the Firm under principles of vicarious liability.

74. To establish an employer's vicarious liability through principles of respondeat superior, the employee must have committed the wrong within the scope of his or her employment.

75. The alleged legal malpractice by Santoro was within the scope of her employment at the Firm. Scottsdale retained Santoro and the Firm to represent RLS in the *Hoce* lawsuit, and the alleged legal malpractice occurred during that representation and in Santoro's capacity as a lawyer employed at the Firm. The defense work performed was precisely the type of work Santoro was employed to perform and that benefited the Firm.  Therefore, Scottsdale, as subrogee of RLS, asserts a claim of vicarious liability against the Firm for Santoro's alleged professional negligence, breach of fiduciary duty, and breach of contract.

### VII. LEGAL MALPRACTICE: DIRECT CLAIMS

76. Scottsdale incorporates by reference the above statements.

77. Scottsdale retained Defendants to represent RLS in the *Hoce* lawsuit. As such, Scottsdale, RLS, and Defendants entered a tripartite relationship, in which the law deems Scottsdale tantamount to a Firm client.

78. Because of Scottsdale's relationship with Defendants within this tripartite relationship, Defendants owed Scottsdale duties of care, fiduciary duties, and contractual obligations, so long as these did not conflict with their duties to RLS.

79. Scottsdale has serious doubts concerning RLS's allegations that Defendants committed legal malpractice in the *Hoce* lawsuit, but as alleged above, those allegations have yet to be directly adjudicated and currently remain open. Should RLS' allegations of malpractice as itemized above be correct, then Defendants breached their contractual, fiduciary, and professional duties to Scottsdale which proximately caused harm to Scottsdale, including subjecting Scottsdale to the costs of the Utah lawsuit and a potential judgment therein. Scottsdale would therefore have direct claims of legal malpractice against Santoro (and the Firm under principles of vicarious liability and respondeat superior) arising out of the tripartite relationship.

## VIII.   BREACH OF CONTRACT

80. Scottsdale incorporates by reference the above statements.

81. Regardless of or in addition to any attorney-client relationship and/or tripartite relationship, Scottsdale entered into an express and implied binding and enforceable contract, that was evidenced in writing and verbally with Defendants, to competently and fully represent RLS in the *Hoce* lawsuit in exchange for payment of Defendants' fees.

15

82.  RLS alleges that Defendants' legal defense was deficient in the ways discussed above, including without limitation failing to properly investigate the case, failing to communicate settlement offers, failing to retain appropriate experts, making poor trial decisions, and undergoing the legal defense without adequate experience and training. RLS alleges that the defense was so deficient that neither Scottsdale nor Defendants can be deemed to have provided RLS with a defense, or at a minimum that the defense was not of the caliber that Defendants had expressly or impliedly promised Scottsdale to deliver to RLS.

83. Scottsdale has serious doubts about the truth of RLS's allegations, but they have not been directly adjudicated and currently remain as open issues.  If RLS's allegations are true, then Defendants breached their contract with Scottsdale by failing to provide RLS a defense as promised and failing to meet the express and implied duties under its contract with Scottsdale.

84. Scottsdale paid Defendants their costs and fees and therefore fully performed its obligations under the contract.

85. The alleged breaches of contract by Defendant would be the proximate cause of harm to Scottsdale, including subjecting Scottsdale to the costs of the Utah lawsuit and a potential judgment therein, which Scottsdale would be entitled to recover from Defendants as damages.

## IX. JURY DEMAND

Scottsdale demands a trial by jury on all matters triable by a jury.

## X. PRAYER FOR RELIEF

Scottsdale asks the Court for the following relief:

1.  Special and general damages as set forth in this Complaint and as may be proven at trial, against all Defendants.

2.  A judgment against Santoro in favor of Scottsdale in an amount to be determined at trial.

3.  A judgment against the Firm in favor of Scottsdale in an amount to be determined at trial.

4.  Pre and post judgment interest, as well as attorney's fees to the extent allowed by law.

5.  All other relief that the Court deems equitable and correct.

Respectfully Submitted this 13th Day of August 2021,

> /s/ Thomas Walker Farrell
> Thomas Walker Farrell
> Florida Bar No.:  106770
> Hall & Evans, LLC
> 222 S. Main Street, Suite 500
> Salt Lake City, UT  84101
> Telephone:  (385) 282-5072
> E-Mail: farrellt@hallevans.com
>
> *Attorneys for Plaintiff*